IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LIVE BAIT, L.L.C.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:20-00213-JB-B |
| ) | |
| **HUDSON SPECIALTY INSURANCE COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

### ORDER

This matter is before the Court on Defendant Hudson Specialty Insurance Company's ("Defendant") Motion for Summary Judgment on all of Plaintiff Live Bait, LLC's claims and on Defendant's Counterclaim for Declaratory Judgment. (Docs. 32 and 33). The Motion has been fully briefed and a hearing was held on January 28, 2021. Upon due consideration of the filed documents, relevant law and the discussion at the hearing, the Court concludes that Defendant's Motion is due to be denied.

**I.   BACKGROUND**

This case involves a dispute over whether Defendant owes a duty to defend Plaintiff, under a Liquor Liability Insurance Agreement ("Policy"), against a claim arising from an altercation between Plaintiff's employees and a patron following the sale of alcohol to the patron.

**A.   The Turner Action**

On October 5, 2018, Rodger Turner ("Turner") filed a complaint in the Circuit Court of Baldwin County, Alabama, against Plaintiff and its employee James Mack, styled *Turner v. Live*

*Bait, et al.*, CV-2018-901315 (the "Turner Action").[1] Turner alleges he was a patron at Plaintiff's premises on July 28 - 29, 2018 when he was injured during an altercation with Plaintiff's security guard, James Mack and / or a fictitious party.[2] The altercation was over change Turner claimed was due from his purchase of alcoholic beverages. (Doc. 25 at ¶4). At the time, Plaintiff was offering a drink special: three "fireball" shots for the price of one, or $6.00. (Doc. 25-10 at ¶7). Turner purchased the three shots with a $20 bill. (Doc. 25-10 at ¶8). Plaintiff's server did not immediately or correctly return Turner's change. (*Id.* at ¶¶9-13). While the waitress retrieved additional change from a jar, she complained to Mack, Plaintiff's security guard. (*Id.* at ¶14). The waitress returned to Turner, wadded up the change and threw it at him. (*Id.* at ¶15). Thereafter, Mack, or an unidentified party, engaged Turner in a physical altercation, knocking him unconscious and otherwise injuring him. (*Id.* at ¶¶16-21). Turner sued Plaintiff as a result in 2018. (Doc. 25). The Court has been given no other facts beyond those alleged in the Turner Action complaints.

### B. The Liquor Liability Policy

At the time of the Turner incident, Plaintiff was covered by the Policy.[3] The pertinent Policy language is as follows:

---

[1] All references to the Turner Action are to the Second Amended Complaint. (Doc. 25-10).

[2] Turner amended his complaint in the Turner Action on June 4, 2020. As part of that amendment, he attempted to remove all references to Mack and, in lieu of Mack, add a fictitious party. The amendment was not entirely successful in doing so and at times the Complaint switches between Mack and the fictitious party. The Court does not find the amendment to be pertinent to its conclusion herein. In this Order, the Court will refer to the underlying tortfeasor as "Mack."

[3] The Policy term was from August 4, 2017 to August 4, 2018. (Doc. 25 at ¶1).

### I.  LIQUOR LIABILITY INSURANCE COVERAGE

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of injury to which this insurance applies, sustained by any person if such liability is imposed upon the **insured** by reason of the selling, serving or giving of any alcoholic beverage at or from the **insured premises**, and the company shall have the right and duty to defend any suit against the **insured** seeking such **damages**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Doc. 25-1 at 5 (emphasis added)). This section of the Policy is followed by an "**Exclusions**" section. (*Id*.). There is no exclusion for assault and battery, nor is there language limiting the scope of the Policy to liability under Alabama's Dram Shop Act (Ala. Code §6-5-71 and hereinafter "Dram Shop Act").[4]

### C. Procedural History

This case has followed a crooked line to this point. After the Turner Action was initiated against Plaintiff, it made a claim on March 7, 2019 for defense under the Policy. Defendant denied Plaintiff's claim by letter dated March 13, 2019. (Doc. 25-3). Plaintiff pressed its claim on two more occasions to no avail. On October 21, 2019, Plaintiff signaled its intent to file suit

---

[4] (a) Every wife, child, parent, or other person who shall be injured in person, property, or means of support by any intoxicated person or in consequence of the intoxication of any person shall have a right of action against any person who shall, by selling, giving, or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, as well as exemplary damages.
(b) Upon the death of any party, the action or right of action will survive to or against his executor or administrator.
(c) The party injured, or his legal representative, may commence a joint or separate action against the person intoxicated or the person who furnished the liquor, and all such claims shall be by civil action in any court having jurisdiction thereof. *Code of Ala. §* 6-5-71.

against Defendant for "breach of contract, bad faith, and declaratory judgment with respect to Live Bait's claim for coverage." (Doc. 25-8).

Plaintiff filed this action against Defendant in the Baldwin County Circuit Court on November 11, 2019 (styled *Live Bait, LLC v. Hudson Specialty,* CV-2019-901588 (Doc. 1-8 at 44)), which resulted in a default judgment against Defendant. On February 20, 2020, Plaintiff filed an Amended Complaint to add a bad faith claim against Defendant. (Doc. 1-9 at 38 – 43). Thereafter, in May, 2020, Turner amended his pleadings in the Turner Action against Plaintiff. On June 8, 2020, Plaintiff mailed a copy of the Turner amendment to Defendant, to which it replied, "the allegations in that [Turner] pleading do not trigger any obligations for Hudson Specialty under [the] Policy." (Doc. 25-12). Defendant removed this action on April 8, 2020 and filed a contemporaneous Motion to Set Aside Default (Doc. 5), which was granted on July 6, 2020. (Doc. 23). Plaintiff thereafter filed its Second Amended Complaint (Doc. 25), which is the operative complaint. The Defendant filed an answer and counterclaim. (Doc. 27). Defendant's Counterclaim is for a declaratory judgment that it has no obligation under the Policy to cover or defend Plaintiff in the Turner Action. (Doc. 27). Plaintiff asserts three counts in its controlling Second Amended Complaint: breach of contract, bad faith and declaratory judgment. (Doc. 25). Defendant seeks judgment as a matter of law on Plaintiff's Second Amended Complaint and its Counterclaim. (Doc. 32).

## II.      LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to

4

materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. . . . If, however, the movant carries the initial summary judgment burden . . ., responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal citation omitted). If the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Ford v. Jolly Shipping, Inc.*, 2018 U.S. Dist. LEXIS 177695, *4 (S.D. Ala. Oct. 15, 2018) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant . . ." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). However, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion . . ." Fed. R. Civ. P. 56(e)(2).

### III.   DISCUSSION

Notwithstanding the tangled procedural history of this action, Defendant has maintained a consistent position through its June 8, 2020 letter to Plaintiff denying its duty to defend, its Motion and supporting brief, and its argument at the hearing of the Motion. In a nutshell, Defendant argues the facts alleged in the Turner Action "whether in [the] original or amended complaint – were not within the scope of the [Policy] and did not trigger [Defendant's] duty to

defend." (Doc. 33 at 1). Anticipating summary judgment on Plaintiff's breach of contract claim, Defendant maintains it is entitled to summary judgment on Plaintiff's bad faith claim. For the foregoing reasons, Defendant is wrong.

    A. **Applicable Rules of Policy Interpretation under Alabama Law**

The essential issue raised by Defendant's Motion for Summary Judgment on Plaintiff's contract claim is whether the altercation between the Plaintiff's employee(s) and Mr. Turner, following his purchase of alcohol, invoked Defendant's duty to defend under the Policy. In this diversity case involving the interpretation of an insurance policy, the Court applies Alabama's substantive law. *Smith Lake Marina & Resort LLC v. Auto-Owners Ins. Co.*, 2017 U.S. Dist. LEXIS 152526, *5 (N.D. Ala. Sept. 20, 2017) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

The Court must first address the issue of whether the Policy is ambiguous or unambiguous. Under Alabama law, that initial issue "is a question of law for the court to decide." *Pa. Nat'l Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F. Supp. 2d 1295, 1303 (S.D. Ala. 2008) (quoting *Nationwide Ins. Co. v. Rhodes,* 870 So. 2d 695, 696-97 (Ala. 2003) (internal citation omitted)); *see also B.D.B. v. State Farm Mut. Auto. Ins. Co.,* 814 So. 2d 877, 879 (Ala. Civ. App. 2001) ("The interpretation of an insurance contract presents a question of law."). If "there is no ambiguity in the terms of the contract, it must be enforced as written, for a court has no authority to make a new contract for the parties." *Smith Lake*, 2017 U.S. Dist. LEXIS 152526, *5 (quoting *Colonial Life & Acci. Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967)). "General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract." *Roberts Bros., Inc.*, 550 F. Supp. 2d at 1303-1304 (quoting *Drummond Co. v. Walter Industries, Inc.,* 962 So. 2d 753, 780 (Ala. 2006)); *see also Progressive Specialty Ins. Co. v. Naramore,* 950 So. 2d 1138,

1141 (Ala. 2006) ("Insurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved.") (internal citations omitted); *Shrader v. Employers Mut. Cas. Co.,* 907 So. 2d 1026, 1034 (Ala. 2005) ("If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy . . . by making a new contract for the parties.") (internal citation omitted).  Ambiguous contracts, on the other hand, must be construed liberally in favor of the insured, though the burden to prove coverage remains on the insured.  *Smith Lake*, 2017 U.S. Dist. LEXIS 152526, *5 (citing *Ladner & Co. v. S. Guar. Ins. Co.*, 347 So. 2d 100, 103 (Ala. 1977)); *Pac. Indem. Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 791 (1964); *Perkins v. Hartford Ins. Grp.*, 932 F.2d 1392, 1395 (11th Cir. 1991); *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) ("This broad duty on the part of an insurer to defend an insured arises out of the principle that an ambiguous insurance policy is to be construed liberally in favor of the insured and strictly against the insurer" (citing *American States Ins. Co. v. Martin*, 662 So. 2d 245 (Ala. 1995); *Tyler v. Insurance Co. of North America*, 331 So. 2d 641 (Ala. 1976)).

When interpreting an insurance policy, courts give the policy language the meaning that an ordinary layperson would give to the language.  *Reliance Ins. Co. v. Copper [sic]/T. Smith Corp.*, 2001 U.S. Dist. LEXIS 6424, *5-6 (S.D. Ala. April 24, 2001) (citing *Taylor v. Aetna Life Ins. Co.*, 54 F. Supp. 2d 1076, 1088 (M.D. Ala. 1999); *Liggans R.V. v. John Deere Ins*. Co., 575 So. 2d 567, 571 (Ala. 1991)).  To say it another way, this Court must apply the ordinary and usual meaning of the words used in the policy.  *Reliance Ins. Co.*, 2001 U.S. Dist. LEXIS 6424, *5-6 (citing *Cook v. Aetna Ins. Co.*, 661 So. 2d 1169, 1172 (Ala. 1995)).

An insurance company analyzes its duty to defend in light of the facts of the underlying accident, or the facts alleged in the complaint in the action against the insured.

> Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. … If the allegations of the injured party's complaint show an accident or occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured.

*Hartford Casualty Insurance Co.*, 928 So. 2d at 1009 (internal quotes omitted). A "court is not constrained to the allegations of the underlying complaint but may additionally look to facts which may be proved by admissible evidence." *Roberts Bros., Inc.*, 550 F. Supp. 2d at 1304 (citing *Tanner v. State Farm Fire & Cas. Co.,* 874 So. 2d 1058, 1063-1064 (Ala. 2003)). "[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Hartford*, 928 So. 2d at 1010 (internal quotes omitted)).

### B. The Defendant's Interpretation of the Policy

Defendant contends the Policy does not require it to defend Plaintiff against the claims asserted in the Turner Action. Defendant insists the Policy is only intended to provide a defense to claims by a third party injured by a person who became intoxicated by the sale or service of alcoholic beverages at the insured's premises. Defendant frames its argument as follows: "to trigger defense and coverage under a liquor liability policy, there must be some indication that the sale, service or provision of alcohol by the insured caused someone to become intoxicated who then harmed the claimant or the plaintiff in the underlying case." (Doc. 49 at 25). At oral argument, Defendant argued as follows:

8

> "The liquor has to intoxicate the people that assail you. And if that's gone, that's missing from the equation, then there is no liability imposed because of the selling, serving, or giving of alcoholic beverages at the premises;"

> "There has to be that causal link that the liquor sold by that purveyor, that insured, intoxicated the assailant. And there's nothing like that in the Turner lawsuit. Nothing at all. The two employees at issue, the waitress and the security guard -- there's no allegations that they were drunk; that they were drinking on the job; that they had been served alcohol;" and,

> "…searched for a contrary case in which the Court said that complete absence of allegations of the assailant being intoxicated is enough to go on past the duty to defend and I couldn't find one."

Defendant contends the phrase "any person" does not include the person of Mr. Turner. According to Defendant, based on Alabama common law, "any person" should be interpreted to mean third parties injured by someone intoxicated with alcohol provided by the insured. Additionally, Defendant's interpretation is that coverage should be conditioned on the tortfeasor being intoxicated. Third, the Defendant argues it is entitled to summary judgment because the Policy coverage is limited to actions alleged under the Dram Shop Act and the Turner Action does not include such a count. (Doc. 33 at 12).

In response, Plaintiff points out that Defendant's argument amounts to an unsupported limiting of its duty to defend to cases arising under Alabama's Dram Shop Act, claims alleging an injury by an intoxicated person, or claims made by a protected party under Alabama's Dram Shop Act. (Doc. 49 at 9). Plaintiff accuses Defendant of rewriting the Policy. Plaintiff notes the Dram Shop Act is not mentioned anywhere in the Policy, and "failing to articulate such limitation in the policy itself, the Defendant conjures one by framing its coverage analysis against the backdrop of Alabama's Dram Shop Act." (Doc. 49 at 15).

### C. Analysis

#### 1) The Court's Interpretation of the Policy

The Court finds the Policy language is unambiguous and belies Defendant's argument that it is entitled to summary judgment on Plaintiff's breach of contract claim. Immediately after Plaintiff's sale of alcohol to Turner, Turner became involved in disputes with Plaintiff's employee(s) resulting in an altercation that caused his injuries. (Doc. 25-10). Inputting these facts into the Policy language yields the following:

> The company (Defendant) will pay on behalf of the insured (Plaintiff) all sums which the insured (Plaintiff) shall become legally obligated to pay as damages because of injury to which this insurance applies, sustained by any person (Turner) if such liability is imposed upon the insured by reason of the selling (the three shots), serving or giving of any alcoholic beverage (again, the three shots) at or from the insured premises, (Live Bait Bar and Grill).

Defendant's interpretation simply conflicts with the unequivocal Policy text. The Policy provides coverage for injuries "sustained by any person." The phrase "any person" is unambiguous and not subject to judicial narrowing. The Court will not whittle down the broad class of "any person" to Defendant's proposed sub-class. The word "intoxicated" does not appear in the Policy; it contains no language limiting coverage to cases in which the underlying tortfeasor (or any other person) was intoxicated. Finally, the Policy does not confine Defendant's "legal obligation" to the defense of Dram Shop actions or of claims by third parties injured by a person who was provided alcohol by the insured. The insuring language of the Policy is materially broader than liability under the Dram Shop Act.

Defendant further argues that the Policy does not obligate it to defend an action which cannot prevail under Alabama law. Whether Turner has a chance of prevailing against the insured, however, is not the issue before the Court. Plaintiff correctly notes that an "insurer owes

the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1065 (Ala. 2003). The Court is concerned with whether the allegations of the Turner action, regardless of their merits, are within the insuring language of the Policy.

### 2) Cases cited by the Defendant

Defendant cited numerous cases which are clearly distinguishable based on Defendant's Policy. A number of the cases involve policies with "assault and battery exclusions." See *Clarendon Am. Ins. Co. v. Burlington Ins. Co.,* 677 F. Supp. 2d 1317, 1318 (S.D. Fla. 2009); *Doe v. Hudson Specialty Ins. Co.,* 719 F. App'x 951, 952 (11th Cir. 2018); and, *Clark v. Sputniks, LLC,* 368 S.W.3d 431, 439 (Tenn. 2012). Curiously, there is no assault and battery exclusion in Defendant's Policy.

Defendant focuses on cases involving injuries attributable to reasons other than "the selling, serving or giving of any alcoholic beverage" by the insured. See *Jimmy's Diner, Inc. v. Liquor Liab. Joint Underwriting Ass'n of Massachusetts,* 571 N.E.2d 4, 6 (Mass. 1991) ("Gardner's answers to interrogatories more extensively described the incident, alleging that the conflict between Gardner and the employee occurred when Gardner, then allegedly forty-five years old, refused to produce identification proving himself to be of legal drinking age"); *Whiskey Tango, Inc., v. United States Liab. Ins. Grp.,* 2007 Phila. Ct. Com. Pl. LEXIS 157, *7 (Pa. Com. Pl. May 15, 2007) ("The Complaint in the Underlying Action contains no allegation that McQuoid's injuries resulted from Whiskey Tango's selling, serving, or furnishing alcohol to anyone."); *River Deck Holding Corp. v. U.S. Liab. Ins. Co.,* 2004 WL 594069, at *3 (Pa. Com. Pl. Mar. 23, 2004) ("Important here, the underlying Complaints . . . do not contain Dram Shop Act claims, and make no mention

11

of alcoholic beverages as a factor in causing Casselli's and Sheerin's injuries."); *Rodriguez v. Goodlin*, 2006 WL 2390218, at *3 (N.J. Super. Ct. App. Div. Aug. 21, 2006) ("the only reasonable inference is that the altercation took place because Rodriguez owed Almeida money.").

On the other hand, Turner does allege an incident arising from the sale of alcohol. As the Plaintiff points out, Turner pleads a litany of facts related to the purchase of Fireball shots, the dispute over the change, and the intervention of Plaintiff's security guard. (Doc. 49 at 19, citing Doc. 25-10). In a case cited by Defendant, the Eleventh Circuit aptly concluded: "The Policy covers only one peril: liability related to the sale and distribution of alcohol." *Doe v. Hudson Specialty Ins. Co.*, 719 F. App'x 951, 954 (11th Cir. 2018). This statement is true here. Not only does the Turner Action involve Plaintiff's sale of alcohol to Mr. Turner, it includes allegations of a close temporal proximity between the sale and the altercation during which he was injured. Defendant cites no case where the incident and the actual sale of alcohol were so close in time. This temporal connection further underscores that Defendant is not entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

### D. Bad Faith Claim

Count Three of the Amended Complaint asserts a bad faith claim against Defendant for failing to investigate the Turner Action. (Doc. 25 at ¶35 (Defendant "failed to investigate and evaluate the Turner claim properly or provide for the defense of the Turner claim.")). Plaintiff also alleges Defendant "intentionally failed and/or refused to defend its insured without any reasonably legitimate or arguable reason for said failure." (*Id*. at ¶36). Defendant contends it is entitled to summary judgment on Plaintiff's bad faith claim because there is no genuine dispute

that its reason for denying the claim, and therefore, failing to investigate further, was arguably reasonable and legitimate.

Under Alabama law, there have been two kinds of bad faith: the "normal" case and the "abnormal" case. *Butler v. Allstate Indem. Co.*, 2011 U.S. Dist. LEXIS 45637, *13-14 (M.D. Ala. 2011) (citing *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 32 (Ala. 2008)). More recently the Alabama Supreme Court has clarified that the "abnormal" case, or the "bad-faith-refusal to investigate" case, is the "the intentional failure to determine whether or not there was any lawful basis for such refusal." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013) (quoting *Chavers v. National Sec. Fire & Cas. Co.*, 405 So. 2d 1, 7 (Ala. 1981)). Plaintiff alleges the "failure to investigate" type of bad faith. The "bad-faith-refusal to investigate" tort has four elements and a conditional fifth element:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
>
> (b) an intentional refusal to pay the insured's claim;
>
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
>
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
>
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Brechbill*, 144 So. 3d at 257 (citing *National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)).

Defendant contends Plaintiff cannot prevail on the bad faith claim because it cannot prove the third element of the claim, i.e., the absence of any reasonably legitimate or arguable reason for the refusal to defend.  The Alabama Supreme Court has routinely determined "if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *Brechbill*, 144 So. 3d at 258 (citing *Gulf Atlantic Life Ins. Co. v. Barnes,* 405 So. 2d 916, 924 (Ala. 1981)).  If the insurer's investigation "established a legitimate or arguable reason for refusing to pay [the insured]'s claim," a tort action for bad faith refusal to pay a contractual claim will not lie. *Brechbill*, 144 So. 3d at 258 (citing *Weaver v. Allstate Ins. Co.*, 574 So. 2d 771, 774 (Ala. 1990) and *Bowers v. State Farm Mut. Auto. Ins. Co.*, 460 So. 2d 1288, 1290 (Ala. 1984)).  "Alabama law is clear:  . . . regardless of the imperfections of [the insurer's] investigation, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim."  *Brechbill*, 144 So. 3d at 259 (quoting *Weave*r, 574 So. 2d at 775).

In order to demonstrate Plaintiff's inability to prove the third element of the bad faith claim, Defendant relies on the argument it made for summary judgment on the breach of contract claim.  Defendant argues its refusal to defend the Turner Action was based on the "reasonably legitimate," "arguable" or "debatable" reason that the Turner Action would not impose liability on Plaintiff by reason of selling, serving, or providing of alcohol on its premises.

Defendant's argument has no merit, is based on a faulty premise, and fails for the same reasons its summary judgment motion on the breach of contract count fails.  Defendant chose to ignore the facts and cling to its interpretation of the Policy: "to trigger defense and coverage under a liquor liability policy, there must be some indication that the sale, service or provision of

alcohol by the insured caused someone to become intoxicated who then harmed the claimant or the plaintiff in the underlying case." (Doc. 33 at 25). As discussed in section III, there is no language in the Policy requiring a third-party aggressor or tortfeasor to be intoxicated to invoke coverage under the Policy as written.

Upon review of the Policy language, and for all the reasons stated in section III, the Court finds Defendant's Motion for Summary Judgment on Plaintiff's claims is due to be denied.

**DEFENDANT'S COUNTERCLAIM FOR DECLARATORY JUDGMENT**

The Defendant moved this Court for Summary Judgment on its declaratory action regarding its duty to defend and duty to indemnify under the terms of the Policy. (Doc. 32). For the reasons stated herein, Defendant's Motion for Summary Judgment on its Counterclaim is denied.

**DONE and ORDERED** this 24th day of March, 2021.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE